# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CRYSTAL LEE PARKER,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security, [1]<br><br>Defendant.<br>_____/ | Case No. 1:24-cv-01282-JLT-FRS (SKO)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED<br><br>(Doc. 14)<br><br>14-DAY DEADLINE |

## I.       INTRODUCTION

Plaintiff Crystal Lee Parker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, and that the final decision of the Commissioner be affirmed.

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## II.    BACKGROUND

On July 27, 2021, Plaintiff filed an application for SSI payments, alleging she became disabled on September 5, 2010, due to post traumatic stress disorder (PTSD), anxiety, and depression. (Administrative Record ("AR") 17, 55, 70, 240, 246, 261, 276, 346, 397.)  She thereafter amended her onset date to coincide with the SSI filing date (July 27, 2021).  (AR 39.)

Plaintiff was born in 1980, and was 41 years old on the date the application was filed.  (AR 28, 54, 69, 246, 261, 346.)  She has a high school education.  (AR 28, 241.)  Plaintiff has no past relevant work.  (AR 28, 49.)

### A.    Relevant Evidence of Record[3]

In May 2017, Plaintiff, who was incarcerated, wished to be "put back on [her] meds" for "bad anxiety."  She discussed her "stressors," which were "mainly environmental."  (AR 708.)  Plaintiff submitted a request for mental health services support in October 2017 because of a "situational stressor."  She reported that although she had previously taken psychiatric mediations, she "doesn't anymore" and was "okay now."  (AR 662.)  In January 2018, Plaintiff was "very upset" and "crying off and on" due to her grandmother's death.  (AR 664.)  Plaintiff was prescribed a psychiatric medication in February 2019, which she reported she was "tolerating [it] well."  (AR 484.)  In May 2019, it was noted that Plaintiff was "doing well on her medications."  (AR 324.)

Plaintiff was released from prison in June 2019 and seen by psychiatrist Dr. Jaime Ortiz and associated social workers while on parole.  (AR 336–37, 341.)  Plaintiff reported to her social worker that she was compliant with medication with "good result."  (AR 341.)  Upon examination, she was cooperative and polite ("matter-of-fact"), with intact affect and judgment; normal speech and psychomotor activity; adequate intellectual functioning, reading, and writing skills; and "good" mood, memory, and concentration.  (AR 341.)  Plaintiff was assessed as "psychiatrically stable, with reported good effect of medication regimen."  (AR 341.)

In July 2019, she reported to Dr. Ortiz problems with anxiety and that her medication was not helping, so it was adjusted.  (AR 240.)  Dr. Ortiz noted in October 2019 that Plaintiff was "compliant

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

with [her] medications" and that they were "effective." (AR 338.) In March 2020, Plaintiff reported that she has "difficulty keeping appointments secondary to transportation and financial difficulty." (AR 384.) She presented as "psychiatrically stable, with reported good effect of medication regimen." (AR 384.)

Plaintiff underwent a psychiatric assessment via in April 2020. (AR 760–67.) She reported that she could not be around people, had difficulty sleeping, racing thoughts, and difficulty concentrating. (AR 760.) It was noted that "without treatment [Plaintiff] may not be able to pursue her career goals that may lead to losing her current family/social resources exposing her to the possibilities of homelessness, starvation, and seclusion." (AR 767.) Upon mental status examination, Plaintiff had a pleasant attitude, euthymic mood, congruent and appropriate affect, normal speech, coherent thought process, normal cognition (including concentration and memory), fair insight, good judgment, and average intelligence. (AR 769–71.) Later that same month, Plaintiff was noted to be "psychiatrically stable, with reported good effect of medication regimen." (AR 383.) Several attempts to schedule appointments with Plaintiff were made in the following months, but the providers were unable to leave voice mail messages. (AR 825–26.)

In July 2020, Plaintiff reported taking her psychiatric medications and was "doing well." (AR 379.) She was again noted to be "psychiatrically stable," yet was "minimally interactive at this appointment." (AR 379.) She reported "frustration with her parole officer" because she "cannot do something because I have to wait for [them]." (AR 880.) More unsuccessful attempts were made to contact Plaintiff to schedule an appointment in August 2020, and she missed her appointment in September 2020. (AR 378, 379, 844–51.)

Plaintiff reported in August 2021 that she could not keep her appointments for "various reasons" because her "life is hard" and she is "financially stressed." (AR 361.) The notations reflect that she was "psychiatrically stable" and compliant with medication, which "benefit[ted]" her. (AR 361.) The same notations regarding status and medication were made in September and November 2021. (AR 356, 358.)

In January 2022, Dr. Ortiz completed a "Mental Residual Functional Capacity Questionnaire." (AR 401–403.) He opined that Plaintiff would be precluded from understanding and

remembering detailed instructions; completing a normal workday or week; and setting realistic goals or making plans independently of others for 10 percent (48 minutes) of an eight-hour workday. (AR 401–402.) Dr. Ortiz further opined that Plaintiff would be precluded from performing activities within a schedule; maintaining regular attendance; being punctual; sustaining an ordinary work routine without special supervision; working in coordination with or in proximity to others; interacting appropriately with the general public; getting along with coworkers or peers; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness; responding appropriately to changes; being aware of normal hazards and taking appropriate precautions; and traveling in unfamiliar places or using public transportation for five percent (24 minutes) of an eight-hour workday. (AR 402.) Finally, he opined that Plaintiff would be absent from work three days a month and would be unable to complete eight-hour workday three days a month. (AR 403.)

Plaintiff presented as "psychiatrically stable" and denied being in distress in April 2022. (AR 716.) It was noted that she is medication compliant, and it is beneficial, and that she "will be able to manage psychiatric symptoms effectively." (AR 716.) Plaintiff underwent another psychiatric assessment in October 2022. (AR 777–801.) She reported that she would cry excessively for no reason. (AR 777.) The mental status examination showed that Plaintiff was pleasant and cooperative yet guarded, with good eye contact, normal speech, normal cognition (including concentration and memory), fair insight, good judgment, normal thought process, and average intelligence. (AR 783–84.) She was diagnosed with post-traumatic stress disorder (PTSD), generalized anxiety disorder, and moderate cannabis use disorder. (AR 797.)

In January 2023, Plaintiff acknowledged she had missed appointments due to "extenuating circumstances." (AR 893.) Plaintiff reported in February 2023 that she was increasingly worried and fearful, with crying spells, increased anxiety, racing thoughts, and helplessness. (AR 803.) According to Plaintiff, she had been off her psychiatric medication since June 2022 and wished to resume the regimen. (AR 803.) She remarked, "Thank God I finally got in here to see the psychiatrist to get on some medication, I have been having a hard time just dealing with everything the last few weeks." (AR 895.) Upon mental status examination, Plaintiff demonstrated good eye contract; cooperative attitude yet depressed and sad mood; normal affect and speech; logical, goal oriented,

and coherent thought process, normal cognition (including concentration and memory), fair insight, good judgment, and average intelligence. (AR 806–809.)

Plaintiff presented for a progress evaluation in May 2023, and reported that her "meds are working fine" and that her mood is "calm and stable." (AR 905–13.) Her mental status examination was normal. (AR 905–906.)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 18, 2021, and again on reconsideration on December 28, 2021. (AR 82–86, 96–101.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 102–38.) The ALJ conducted a hearing on October 2, 2023. (AR 35–53.) Plaintiff appeared at the telephonic hearing with her attorney and testified as to her allegedly disabling conditions. (AR 40–48.) A Vocational Expert ("VE") also testified at the hearing. (AR 48–52.)

**1.      Plaintiff's Testimony**

At the hearing, Plaintiff testified that she is unable to work due to mental health symptoms, including being fidgety, edgy, untrusting of people, trouble sleeping, and having problems with memory and concentration. (AR 43, 45.) She is receiving mental health treatment including weekly visits to her home and medication. (AR 41–44.) She testified that she is not doing any better and believes that part of the problem is the location she lives in due to both the people in the area and the quality of care available. (AR 42–44.) According to Plaintiff, she has medication side effects, including shaking. (AR 46.)

Plaintiff testified that she currently does not have any power in her house, which is part of the reason she cannot take some of her phone calls. (AR 44.) According to Plaintiff, she can complete her household chores and take care of her personal hygiene, but she relies on her stepfather to bring her groceries and help her with other needs. (AR 46–47.) She takes "little naps" throughout the day and has not slept well in approximately 15 years. (AR 46.) Plaintiff testified that she cannot concentrate on anything and cannot even pay attention long enough to watch a television show. (AR 47.)

**2.    Vocational Expert's Testimony**

The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 49.)  The VE was also to assume this person has no exertional limitations, but can: understand, remember and carry out simple job instructions; maintain attention and concentration; perform simple, routine or repetitive tasks; have occasional interaction with coworkers and supervisors; have no direct interaction with the general public; work in an environment with occasional changes to the work setting and occasional work-related decision making. (AR 49.)  The VE testified that such a person could perform a representative sample of jobs in the national economy, such as commercial or institutional cleaner, Dictionary of Operational Titles (DOT) code 381.687-014 with a heavy exertional level and a specific vocational preparation (SVP)[4] of 2; wall cleaner, DOT code 381.687-026 with a medium exertional level and a SVP of 2; and packager, DOT code 920.587-018 with a medium exertional level and a SVP of 2. (AR 50.)  With the additional limitations in a second hypothetical that the first hypothetical person would be (1) absent from work (or must leave work early or arrive at work late) three days per month or (2) off task 15 percent of the workday, the VE testified that no work would be available. (AR 50–51.)  The VE further testified that missing work one day per month three or more months in a row is work preclusive. (AR 51.)

**C.    The ALJ's Decision**

In a decision dated December 21, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–29.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 19–29.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since July 27, 2021, the application date (step one). (AR 19.)  At step two, the ALJ found Plaintiff's following impairments to be severe: adjustment disorder with anxiety; generalized anxiety disorder; post-traumatic stress disorder; and major depressive disorder. (AR 19–20.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20–24.)

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

The ALJ assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can understand, remember, and carry out simple job instructions. She can maintain attention and concentration to perform simple, routine, and repetitive tasks. She can have occasional interaction with coworkers and supervisors and no direct interaction to the general public. She can work in an environment with occasional changes to the work setting and occasional work-related decision making.

(AR 24–28.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five), including commercial or institutional cleaner, wall cleaner, and packager. (AR 28–29.) The ALJ ultimately concluded Plaintiff was not disabled since July 27, 2021, the application date. (AR 29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 17, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

### III.        LEGAL STANDARD

**A.        Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

"However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of

showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## I.    DISCUSSION

Plaintiff contends that the ALJ erred in their assessment of the medical opinion of treating psychiatrist Dr. Ortiz and further failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints. (Doc. 13; Doc. 18.)  The Commissioner responds that the ALJ's consideration of the medical opinion was proper and supported by substantial evidence ant that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 17.)  The undersigned agrees with the Commissioner.

### A.    The ALJ's Treatment of Dr. Ortiz's Opinion Was Not Erroneous

#### 1.    Legal Standard

Plaintiff's claim for SSI is governed by the agency's regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 416.920c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 416.920c(b)(2).  And although the regulations eliminate the prior "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

10

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).   Accordingly, under the regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).  *See also id*. § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* § 404.1520c(c)(3)(i)–(v).  However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(c)(3).  "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'"  *Id*. (quoting § 404.1520c(b)(3)).  *See also id*. § 416.920c(b)(3).  "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"  *Id*.  Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision.  *See* 20 C.F.R. § 415.920b(c)(3).

With these legal standards in mind, the undersigned reviews the weight given to Dr. Ortiz's opinion.

## 2. Analysis

In considering treating psychiatrist Dr. Ortiz's opinion related to Plaintiff's mental functioning, the ALJ determined that the opinion was not persuasive because it

> is not supported by the doctor's treating records, which note that the claimant had a good memory, good concentration, and adequate reading and writing skills. It is also inconsistent with the medical evidence, which notes that [Plaintiff] was pleasant, cooperative, and responsive with a normal ability to concentrate, good eye contact, normal speech, a good memory, fair insight, good judgment, a normal thought process and average intelligence.

(AR 28 (internal citations omitted).) The undersigned finds that the ALJ properly evaluated the supportability and consistency of Dr. Ortiz's opinion.

Regarding supportability, the ALJ determined that Dr. Ortiz's opinion was not supported by their treatment notes. (AR 28.) Specifically, the ALJ observed that Plaintiff demonstrated adequate intellectual functioning, reading, and writing skills, and good mood, memory, and concentration during her mental status examination. (AR 341.) As to consistency, the ALJ found Dr. Ortiz's opinion was generally inconsistent with the other medical evidence, in particular an October 2022 mental status examination showing that Plaintiff was pleasant and cooperative yet guarded, with good eye contact, normal speech, normal cognition (including concentration and memory), fair insight, good judgment, normal thought process, and average intelligence. (AR 28, 783–84.)

Plaintiff asserts the ALJ engaged in "impermissible cherry-picking of the evidence" by failing to consider Plaintiff's reports that she was "isolative, dealing with crying spells, and fearful," presumably referring to AR 760, 777, 783, 803, 887.[6] (Doc. 13 at 4, 8.) A review of the opinion, however, demonstrates that the ALJ did consider and discuss this evidence in their decision. (*See* AR 26 (citing AR 766 (reiterating Plaintiff's reports of fearfulness in AR 760)), AR 777, AR 783, AR 803, AR 887).) Specifically, the ALJ observed that the medical record noted Plaintiff had "impairments in seeking employment and engaging in meaningful activities due to fear of being around people and in public places"; "spent her time alone"; had "symptoms of depression and anxiety and was guarded"; had a "reluctance to going out in public, worry, anxiety, and racing

---

[6] The specific evidence on which Plaintiff relies is not clear, as she only cites generally to "*Supra*" in this section of the brief. (*See* Doc. 13 at 8.)

thoughts and she was trying to adjust to life off parole"; and was "sad and depressed." (AR 26.)

Plaintiff is correct that the ALJ must not "cherry-pick" instances of no or low symptomology without considering the context, such as instances of high symptomology. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'). The undersigned does not concur with Plaintiff, however, that the ALJ committed this error. As has been seen, and contrary to Plaintiff's contention, the ALJ did not fail to consider the records Plaintiff identifies.[7] The true gravamen of Plaintiff's challenge to the ALJ's decision appears to be the ***conclusions*** the ALJ drew from these records, namely, that Plaintiff's limitations "are not so severe as to preclude all work" and that the RFC assessed adequately accounted for Plaintiff's "anxiety, irritability, and depression." (AR 26.)

Plaintiff further asserts that the ALJ "did not understand the inherently subjective nature of mental illness," and therefore erred by "focus[ing] on the lack of objective findings contained within the record as opposed to noting that Plaintiff's mental illness did not lend itself to such findings." (Doc. 13 at 8–9.) This argument is misplaced.[8] A plain reading of the ALJ's decision indicate that they did not find did not find that there was a ***lack*** of evidence to support Dr. Ortiz's opinion, but rather, that the evidence ***actively contradicted*** it.

---

[7] Plaintiff also asserts that the ALJ overlooked evidence that Plaintiff "was repeatedly noted to not appear for scheduled appointments" due to "anxiety," which "fully supports Dr. Ortiz's opinion." (Doc. 13 at 9; *see also* Doc. 18 at 3.) Again, the ALJ did not ignore this evidence: they specifically observed Plaintiff missed "several" appointments. (AR 26.) Moreover, Plaintiff does not establish that her failure to attend appointments was attributable to her anxiety. Instead, the record shows that her lack of attendance was explained by transportation issues (AR 384), financial difficulty (AR 384, 361), the inability to leave voicemail messages on her phone (AR 378, 379, 825–26, 844–51), "extenuating circumstances" (AR 893), and lack of electricity to her home that prevented her ability to receive phone calls (AR 44). *Cf. Molina,* 674 F.3d at 1114 (upholding adverse credibility finding where no medical evidence indicated that the claimant's failure to seek treatment was the result of a mental impairment).

[8] Plaintiff cites *Sanchez v. Apfel*, and the cases cited in *Sanchez*, to support her argument that the ALJ's reliance on "numerous objective findings" is improper. (Doc. 13 at 8–9.) The undersigned notes that *Sanchez* is distinguishable from Plaintiff's general argument here, as the court in *Sanchez* specifically found that it was error for the ALJ to reject the opinion of the plaintiff's treating physician solely on the ground that no objective evidence was offered in support of the assessment. *Sanchez v. Apfel*, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000), distinguished by *Miller v. Colvin,* No. CV 15-7388-AGR, 2016 WL 4059636, at *3 (C.D. Cal. July 28, 2016) (finding "[w]hile objective laboratory testing may not be available, mental health practitioners regularly use clinical evidence such as mental status examinations and/or standardized psychological testing").

Based on the foregoing medical evidence, the ALJ's finding that Dr. Ortiz's opinion was unsupported by and inconsistent with the longitudinal record as a whole is legally sufficient and supported by substantial evidence. It was therefore reasonable for the ALJ to conclude that the record did not support the severity of Dr. Ortiz's opined restrictions, including that Plaintiff would be absent from work three days a month or otherwise unable to complete eight-hour workday three days a month. (AR 403.) Plaintiff's contentions largely suggest the ALJ should have come to a different conclusion when evaluating the evidence, but the undersigned may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). When the evidence is susceptible to more than one rational interpretation, as is the case here, it is the Commissioner's conclusion that must be upheld. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas*, 278 F.3d at 954.

**B.      The ALJ Properly Found Plaintiff Less Than Fully Credible**

   **1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2.    Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 25.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

Here, the ALJ identified at least two valid reasons for discrediting Plaintiff's testimony.  First, the ALJ found Plaintiff's symptoms "were reduced with medication."  (AR 25, 26.)  In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication.  *See* 20 C.F.R. § 416.929(c)(3)(iv)–(v); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits.").  There is substantial evidence in the record both before and during the relevant period on which the

15

ALJ relied that Plaintiff's mental condition had improved with medications and treatment.[9]  For example, in May 2019, it was noted that Plaintiff was "doing well on her medications."  (AR 324.)  In June 2019 Plaintiff reported to her social worker that she was compliant with medication with "good result," and her mental status examination was normal.  (AR 341.)  Dr. Ortiz noted in October 2019 that Plaintiff was "compliant with [her] medications" and that they were "effective."  (AR 338.)  Records reflect that Plaintiff was "psychiatrically stable" with medication in March 2020 (AR 384), April 2020 (AR 383), July 2020 (AR 379), August 2021 (AR 361), September 2021 (AR 358), November 2021 (AR 356), and April 2022 (AR 716).  And Plaintiff reported in May 2023 that her "meds are working fine" and that her mood is "calm and stable," and her mental status examination was normal.  (AR 905–13.)  As there is substantial evidence of Plaintiff's improvement with treatment, such is a clear and convincing reason for not finding Plaintiff's subjective complaints fully credible.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

Second, the ALJ found the evidence showed Plaintiff "was not entirely compliant with her treatment plan," which "exacerbated" her symptoms.  (AR 25, 26.)  The record shows that Plaintiff was off her psychiatric medications from June 2022 to February 2023, (AR 803), when she experienced excessive crying (AR 777, 803); guarded mood (AR 783); increased worry, fear, and anxiety (AR 803); racing thoughts (AR 803); helplessness (803); and "a hard time dealing with everything" (AR 895).  Plaintiff also missed "several" mental health appointments both before and during the relevant time period.  (AR 384, 378, 379, 825–26, 844–51, 893.)

---

[9] For SSI benefits, the relevant period begins on the application date and ends on the date of the decision.  *See Mudaliar v. Bisignano*, No. 1:20-CV-1692 JLT BAM, 2025 WL 2426641, at *4 (E.D. Cal. Aug. 22, 2025) (citing *Koster v. Comm'r Soc. Sec.*, 643 Fed. App'x 466, 478 (6th Cir. 2016) and *Dunson v. Comm'r Soc. Sec.*, 615 Fed. App'x 65, 67, n.1 (3rd Cir. 2015)).  However, "while benefits are not payable prior to the SSI application date, records before and after the relevant period are often necessary to understand a claimant's condition."  *White v. Kijakazi*, No. 2:20-CV-07568-MWF-JDE, 2022 WL 18674566, at *3 (C.D. Cal. Dec. 13, 2022) (collecting cases).  *See also Hernandez v. Kijakazi*, No. 1:21-CV-00036-CDB, 2022 WL 16856174, at *6 (E.D. Cal. Nov. 10, 2022) ("[C]ourts are not prohibited from considering records outside the relevant period when evaluating an SSI claim."); *cf. Brooks v. Colvin*, No. 1:11-CV-2124-SKO, 2014 WL 1270531, at *13 (E.D. Cal. Mar. 26, 2014) (ALJ did not err by considering medical opinions "simply because they were rendered prior to the date on which Plaintiff applied for SSI.").

In evaluating a claimant's claimed symptoms, an ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti*, 533 F.3d at 1039–40; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). In so doing, however, an ALJ must consider a claimant's explanation for failing to undergo the recommended treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). As the Ninth Circuit explained in *Fair*, it is the claimant's burden to adequately explain their failure to follow a prescribed course of treatment. 885 F.2d at 603 (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of their testimony); *see also Smolen*, 80 F.3d at 1293. An ALJ may discount a claimant's credibility due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. Here, Plaintiff's briefing does not address the ALJ's reliance on evidence of Plaintiff's lack of compliance with treatment as reason to discredit her subjective complaints. She proffers no explanation for her failure to take her psychiatric medications as prescribed, and, as explained above, the record undercuts her assertion (made elsewhere in her briefing) that her nonattendance at appointments was due to "anxiety" and an "inability to enter public spaces." (*See* fn. 7, *supra*.) In view of Plaintiff not having met her burden of adequately explaining her failure to follow her treatment regimen, *see Fair*, 885 F.2d at 603, and viewing the record as a whole, the undersigned finds the ALJ's determination that Plaintiff was "not entirely compliant with her treatment plan" is another clear and convincing reason that is supported by substantial evidence for discounting Plaintiff's subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039.

Plaintiff argues, citing Ninth Circuit authority, that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. 13 at 10 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).) However, in that case, the Ninth Circuit held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277. Moreover, the ALJ did not merely provide a summary of the medical evidence. Unlike in *Lambert*, the ALJ here detailed Plaintiff's complaints of isolation, depression, anxiety, and irritability,

17

then contrasted that testimony with opposing evidence from the medical record showing a reduction of those symptoms with medication and the exacerbation of those symptoms by noncompliance (AR 24, 25–26). *See Lambert*, 980 F.3d at 1277 (""We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (quoting *Brown-Hunter*, 806 F.3d at 494). The identification of specific allegations and evidence contradicting those allegations permitted the undersigned to review the ALJ's reasoning. Plaintiff's argument is therefore unavailing. *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")).

In sum, the undersigned finds that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of her limitations.

## IV.    FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment (Doc. 13) be DENIED;

2.    The final decision of the Commissioner of Social Security be AFFIRMED; and

3.    The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Crystal Lee Parker, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings

and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 3, 2026**                    /s/ *Sheila K. Oberto*
                                       UNITED STATES MAGISTRATE JUDGE